## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ERIC BANKS | : | CIVIL ACTION |
| Plaintiff | : | NO. 10-5048 |
| v. | : |  |
|  | : |  |
| COLOPLAST CORP. | : |  |
| Defendant | : |  |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2012, upon consideration of Defendant Coloplast Corp.'s Motion for Reconsideration, and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **DENIED**.

BY THE COURT:

_____
J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC BANKS | : | CIVIL ACTION |
| Plaintiff | : | NO. 10-5048 |
| v. | : | |
| | : | |
| COLOPLAST CORP. | : | |
| Defendant | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS**
**OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

In Coloplast Corp's ("Coloplast") instant motion, the Defendant outlines two arguments which it contends reconsideration should be granted along with its motion for summary judgment with respect to Plaintiff's malfunction theory of strict liability. First, Coloplast argues the malfunction theory is inapplicable to this case as the malfunction theory provides the Plaintiff with the use of circumstantial evidence to permit the trier of fact to infer the existence of a defect even though the defect cannot be ascertained. In this matter, the defect has been located and described to be a hole in the pump contained within the prosthesis. As such, the Defendant argues circumstantial evidence is not needed in order to infer the existence of defect and therefore the malfunction theory is inapplicable.

The above argument fails to take into account the fact the prosthesis malfunctioned twice. The first time a malfunction occurred was when the prosthesis failed to deflate properly. The second time a malfunction occurred was when the prosthesis failed to inflate. It was only when the prosthesis was removed for the second time did the surgeon discover a hole located in the pump which was housed within the prosthesis. A hole was not discovered when the surgeon removed the prosthesis for the

first malfunction, modified and then re-implanted.  Because there is no direct evidence indicating what caused the first malfunction, the malfunction theory should be available to the Plaintiff in order for a jury to be able to infer a defect was present due to the fact that the prosthesis never deflated properly.

Even if one was to agree with counsel that the malfunction theory is inapplicable to this case, a plaintiff presents a prima facie case of strict liability by establishing that the product was defective and that the product caused the plaintiff's injury.  Sherk v. Daisy Heddon 450 A.2d 615, 617 (1982).  Plaintiff has testified in his deposition of two separate occasions where the prosthesis became inoperable.  The first time was when the prosthesis would not deflate.  This occurred the very first time Plaintiff attempted to use the prosthesis.   Plaintiff visited his surgeon regarding this issue who also could not properly deflate the prosthesis.  Accordingly, a second procedure was needed in order to remove the prosthesis, modify it and re-implant it.  The second time a malfunction occurred was when the prosthesis failed to inflate.  Dr. Michael J. Metro, MD, the surgeon who performed the procedures, stated in his affidavit a hole was found in the prosthesis which was the reason said device did not inflate.  Dr. Metro also provided a photograph of the prosthesis which clearly shows a hole in the device.  The affidavit also sates a representative of Coloplast was also present to inspect the prosthesis and agreed with Dr. Metro's conclusion.  According to Mr. Banks, the defect has caused him pain, suffering and emotional embarrassment.  The Defendant has not produced the representative it sent to inspect the prosthesis to testify otherwise.  Based on Mr. Banks testimony, the photograph of the defective prosthesis and the affidavit of Dr. Metro, a

reasonable inference can be made by the trier of fact as to whether a defect existed and whether the defect caused the injury to the Plaintiff.

Secondly, the Defendant argues the Plaintiff has not met his burden of proof with respect to the malfunction theory of strict liability absent expert testimony.  The Defendant argues the Plaintiff must produce evidence by way of expert opinion the product was used properly by the Plaintiff and/or there was no malfeasance on the part of the doctor or the surgical team who implanted the device.  Without an expert witness to testify the procedure was done so correctly, argues the Defendant, the Plaintiff has not met his burden.  In support of its contention the Defendant relies on <u>Rogers v. Johnson and Johnson Products Inc.</u> 523 Pa. 176, 565 A2d 751 (pa 1988) and <u>Wiggins v. Synthes (USA)</u>. 29 A3d 9 (Pa. Super 2011).

In <u>Rogers v. Johnson and Johnson Products Inc.</u> , the Plaintiff's leg was burned after plaster was applied to it prior to setting the Plaintiff's leg in a splint.  The plaster was manufactured by the Defendant.  The Court of Common Pleas entered judgment for the Plaintiff and the Defendant appealed arguing Plaintiff's theory of strict liability should not have been submitted to the jury in light of expert evidence offered by it indicating negligence on part of the physician who applied the plaster onto the Plaintiff's leg.  The issue on appeal to the supreme court was whether a plaintiff can proceed to trial on a strict liability claim even if there is evidence offered by the Defendant indicating negligence by another party as the cause of the malfunction.  The supreme court held in the affirmative and reversed the lower court holding a plaintiff proceeding on a strict liability theory of product malfunction <u>shall not</u> be precluded from having a jury decide the case if the manufacturer of the product introduces evidence of negligence of another

party as the cause of the malfunction, as long as the plaintiff presents a case-in-chief free of secondary causes and thus justifies inference of a defect in the product.  Id., p.

Nowhere in Rogers v. Johnson and Johnson Products Inc. does it require the plaintiff to employ expert testimony in order to prove there was no unreasonable use of the product by the plaintiff or there was no secondary cause responsible for the defect. To the contrary, it was the defendant manufacturer who offered expert testimony which could have led to the inference it was someone other than the manufacturer who caused the defect.  In Defendant's Motion for Reconsideration, Coloplast has failed to offer any evidence Mr. Banks improperly used the prosthesis or that Dr. Metro or his surgical team negligently implanted the prosthesis.   Even if Coloplast presented such expert testimony Rogers v. Johnson and Johnson Products Inc, makes it abundantly clear whether the secondary causation was to be blamed for a product malfunction is a question of fact to be resolved by the jury not the Court.  It is also worth noting Coloplast refused to join the surgeon, his team or the hospital where the procedure was performed as additional defendants in this case although it was well within its rights to do so.  Finally, nowhere in Wiggins v. Synthes (USA), a Superior Court case, does the Court require expert testimony as a prerequisite in establishing a prima facie case of strict liability.

A plaintiff presents a prima facie case of strict liability by establishing the product was defective and that the product caused the plaintiff's injury,  Sherk v. Daisy-Heddon 450 A2d. 615, 617 (1982).  If direct evidence of the product's defective condition cannot be ascertained then the plaintiff may rely on the use of the malfunction theory of product liability thus showing circumstantial evidence of product malfunction.  MacDougall v. Ford Motor Company 257 A.2d 120 (1984).  It [the malfunction theory] relieves the

plaintiff from demonstrating precisely the defect yet it permits the trier of fact to infer one existed from the evidence of the malfunction, absent abnormal use and absence of any reasonable, secondary causes.  Thompson v. Anthony Crane Rental Inc. 473 A.2d 120 (1984).

      In a products liability case the plaintiff seeks to prove, through whatever means he or she has available under the circumstances of the case, that a product was defective when it left the hands of the manufacturer.  In some cases, the plaintiff may be able to prove that the product suffered from a specific defect by producing expert testimony to explain to the jury precisely how the product was defective and how the defect must have arisen from the manufacturer or seller.  In cases of a manufacturing defect, such expert testimony is certainly desirable from the plaintiff's perspective, but it is not essential. The plaintiff, even without expert testimony articulating the specific defect, may be able to convince a jury that the product was defective when it left the seller's hands by producing circumstantial evidence.  Such circumstantial evidence includes  (1)  the malfunction of the product;  (2)  expert testimony as to a variety of possible causes;  (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4)  similar accidents involving the same product;  (5)  elimination of other possible causes of the accident; and  (6)  proof tending to establish that the accident does not occur absent a manufacturing defect.  Dansak v. Cameron Coca-Cola Bottling Co., 703 A.2d 489, 496 (Pa.Super.1997).  The circumstantial evidence in Mr. Banks' case is the occurrence of a malfunction twice, the fact that the prosthesis never properly worked from its first use, the fact that the Plaintiff knew how to properly use the prosthess and did in fact use the device correctly; that there is no other possible cause as to the

malfunction of the prosthesis offered by the Defendant and that this type of accident could not occur absent a defect.

THERE WAS NO UNREASONABLE USE OF THE PROSTHESIS ON PART OF PLAINTIFF

Plaintiff first underwent a penile prosthesis implant on or about December 18, 2007.  The doctor who performed the procedure was Dr. Michael J. Metro, MD.  The prosthesis selected was manufactured by the Defendant.  Mr. Banks testified in his deposition the prosthesis failed to deflate from the first time he attempted to use it.  See line 15 of page 30 of Mr. Banks' deposition testimony which is attached hereto and marked as Exhibit "A".  Mr. Banks immediately visited his doctor who also could not properly deflate the prosthesis.  Line 22 of page 30 of Exhibit "A".

On a subsequent visit to Dr. Metro's office, a representative of the Defendant was present who also could not properly deflate the prosthesis.  Line 1 on page 22 of Exhibit "A".  Mr. Banks further testified he knew the proper method to deflate the device.  Moreover, his doctor reviewed with the Plaintiff the proper method to deflate the prosthesis and finally, a representative of Coloplast reviewed the same procedures with Plaintiff.  Page 33, line 20 of Exhibit "A".  Absent contrary evidence, which to date has not been presented, Plaintiff has shown there was no unreasonable on his part.  Both Dr. Metro and a representative from Coloplast failed to properly deflate the prosthesis both of them reviewed with the Plaintiff the proper method to inflate and deflate the device.  Neither one advised the Plaintiff he was not properly operating the prosthesis.  No testimony has been offered by the Defendant.  Finally, Dr. Metro in his affidavit which is attached as Exhibit "B" has also observed the defect within the prosthesis and concluded

that the hole within the prosthesis was the reason for its inability to perform correctly.

See Dr. Metro's affidavit which is attached hereto as Exhibit "B".


## THERE IS NO EVIDENCE OF ANY REASONABLE, SECONDARY CAUSE FOR THE MALFUNCTION

The Defendant has argues Dr. Metro or his surgical team may have been a secondary cause for the malfunction implying Dr. Metro or his team may have been negligent in implanting the prosthesis.  The Defendant has offered no testimony, let alone expert testimony to support its allegation.  Rather, Coloplast relies on baseless assertions someone else may have been to blame.  According to Coloplast, Dr. Metro would need to opine he, nor his operating team, were negligent in implanting the prosthesis.  Furthermore, it is worth noting the Defendant did not feel the need to join Dr. Metro, his surgical team, or the hospital in this suit despite the fact it is well within its rights to do so.  Coloplast has not produced the representative who visited Plaintiff to opine as to the cause of the fist defect let alone attribute the malfunction to physician's negligence.  No testimony whatsoever has been provided by Coloplast to support its allegations.  Opposing counsel has argued pursuant to Rogers v. Johnson and Johnson Products Inc. that the Plaintiff is required to prove the negative (ie. There was no secondary causation responsible for the defect) and must do so with expert testimony.  Nowhere in Rogers v. Johnson and Johnson Products Inc. or Wiggins v. Synthes (USA),  does it require the Plaintiff to provide any expert testimony.

<u>CONCLUSION</u>

A directed verdict should not be granted where there are factual questions to be submitted to the jury.  If there is a conflict in the evidence, particularly when the evidence consists of oral testimony, if different inferences may reasonably be drawn from the evidence, or if the court would be called upon to pass upon the credibility of witnesses or of their testimony, the case is not a proper one for a directed verdict.  <u>Miller v. Checker Yellow Cab Company of </u>Bethlehem 348 A.2d 128, 130 (1975).  Plaintiff has shown by the preponderance of the evidence he knew how to operate the prosthesis correctly and did in fact do so when the malfunctions occurred.  Furthermore, Coloplast Corp. has failed to provide any evidence whatsoever the malfunction of the prosthesis was a result of a secondary cause.

It is quite clear from <u>Rogers v. Johnson and Johnson Products Inc.</u> there is no requirement that an expert be used in order for the Plaintiff to demonstrate reasonable use of the prosthesis or that there is no secondary causation.  The Defendant may offer proof to the contrary but the issue becomes a question of fact for the fact finder, not the Court.  Furthermore, there has been no evidence presented to suggest the Plaintiff did not properly use the prosthesis or that his surgeon or the surgical team was negligent in some manner thereby providing a secondary causation.  This statement is further strengthened in light of the fact the Defendant refused to join Dr. Metro, his team or the hospital as third party defendants.  Opposing counsel argues Plaintiff must prove unreasonable use or secondary causation by way of expert testimony.  This is simply not correct and logically peculiar as this would require the Plaintiff to retain an expert to prove the

negative of every conceivable unreasonable use or secondary cause before looking to the

Defendant for a remedy.


                    Respectfully Submitted,

                    KASHKASHIAN, FRANKLIN & ASSOCIATES

                    s/JOHN M. FRANKLIN/_____
                    JOHN M. FRANKLIN, ESQUIRE
                    Attorney for Plaintiff
                    ID NO. 88996
                    10 Canal Street, Suite 204
                    Bristol, Pennsylvania  19007
                    Phone:        215-781-9500
                    Facsimile:     215-781-6500
                    John@Kashlaw.us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC BANKS | : | CIVIL ACTION |
| Plaintiff | : | NO. 10-5048 |
| v. | : | |
| | : | |
| COLOPLAST CORP. | : | |
| Defendant | : | |

<u>CERTIFICATE OF SERVICE</u>

      I, JOHN M. FRANKLIN, ESQUIRE, attorney for the Plaintiff, Eric Banks, hereby certify that a true and correct copy of his Memorandum of Law in Opposition to Defendant's Motion for Reconsideration was sent electronically via the electronic filing system and/or by first class mail, postage prepaid, by the undersigned on the date stated below, to the address stated below:

JONATHAN DRYER, ESQUIRE
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Independence Square West
Curtis Center
Suite 1130 East
Philadelphia, PA 19106-3308

KASHKASHIAN, FRANKLIN & ASSOCIATES

s/JOHN M. FRANKLIN/_____
JOHN M. FRANKLIN, ESQUIRE
Attorney for Plaintiff
ID NO. 88996
10 Canal Street, Suite 204
Bristol, Pennsylvania  19007
Phone:        215-781-9500
Facsimile:    215-781-6500
John@Kashlaw.us

Dated: 3/23/2012